KENDRICK STATE BANK v. FIRST NAT. BANK OF PORTLAND.

(District Court, D. Oregon. August 4, 1913.)

No. 5,877.

1. EVIDENCE (§ 459*)—PAROL EVIDENCE—CONTRACT IN NAME OF AGENT—LIABILITY OF PRINCIPAL.

The Oregon rule, that the presumption that a simple contract made in the name of an agent of a known principal is the contract of the agent and not of the principal is a disputable one, and that it may be shown by parol that the principal is bound also, but that in no event may the agent be discharged, does not apply to negotiable instruments and specialties under seal.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1722, 1906–1910, 2109–2114; Dec. Dig. § 459.*]

2. BANKS AND BANKING (§ 134*)—DEPOSITS—LOANS—SECURITIES—NOTE OF OFFICER—SET-OFF.

The K. Bank, plaintiff's predecessor, having issued a certificate of deposit to defendant, a national bank with which the K. Bank did business, the K. Bank's president, desiring to change the form thereof, so that it would not appear among the bank's liabilities, gave defendant his own note therefor, secured by certain stock certificates. The proceeds of the loan were passed to the K. Bank's credit, and were used by it in the course of its business; the president having no personal advantage therefrom. Held, that the loan constituted an indebtedness of the bank, so that, on the failure thereof, defendant was entitled to set off the amount due thereon against the K. Bank's deposit, and to recover the balance from the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 353–374; Dec. Dig. § 134.*]

3. BANKS AND BANKING (§ 134*)—DEPOSITS—INDEBTEDNESS—SET-OFF.

Where the K. Bank's president executed a note to defendant bank for money advanced to and used by the K. Bank in the ordinary course of its business, it was no objection to the right of defendant bank to set off such indebtedness against the K. Bank's deposit, on the failure of the latter, that the loan was made in that form to withhold a full statement of the K. Bank's liabilities from the bank commissioner.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 353–374; Dec. Dig. § 134.*]

4. BANKS AND BANKING (§ 113*)—OFFICERS—AUTHORITY—OBJECTIONS—ESTOPPEL.

Where a bank received the sole and entire benefit of a loan, obtained for it by its president on his own note from defendant, the bank so re-

ceiving the funds could not thereafter deny the authority of its president to obtain the loan.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 273-276; Dec. Dig. § 113.*]

At Law. Action by the Kendrick State Bank against the First National Bank of Portland. Judgment for defendant.

Prior to June, 1910, the Kendrick State Bank of Idaho had been a correspondent of the defendant, the First National Bank of Portland, Or. J. W. Bradbury, who was the president of the former bank, was the owner of the capital stock thereof to the amount of $23,000 out of an entire capitalization of $25,000. In practical reality, he was the owner and manager of the bank, and transacted its business affairs very much as if no one else were interested with him. About the 11th day of June, 1910, the Kendrick Bank, acting through J. W. Bradbury, its president, arranged by correspondence with the Portland Bank to issue to the latter its certificate of deposit for $5,000, accompanied by certain collateral, in consideration of which the Portland Bank extended a credit to the Kendrick Bank in a like sum, the same to bear interest at 6 per cent. per annum. This credit was extended from time to time under the same arrangement until December 6, 1910, when J. W. Bradbury, as president of the Kendrick Bank, wrote the Portland Bank as follows:

"Kendrick, Idaho, Dec. 6, 1910.

"J. W. Newkirk, Cashier, The First National Bank, Portland, Ogn.—Dear Sir: In reference to our C. D. due Dec. 12th, for $5,000.00, would it be possible for us to get an extension on this for six months? The collections with us are at a standstill, and from the outlook I am of the opinion they will continue so until another crop is harvested. We inclose our C. D. for $5,-000.00 for the time asked for, in case you can grant us the extension asked to replace the one you hold. We are writing you on another sheet for this to be carried in another way, with our reasons for asking for the change. Hoping you will grant us the favor of an extension, and thanking you for your many kindnesses of the past, I am,

"Very truly yours,                    J. W. Bradbury, Prest."

The letter referred to in the above is as follows:

"Kendrick, Idaho, Dec. 6, 1910.

"J. W. Newkirk, Cashier, The First National Bank, Portland, Ogn.—Dear Sir: I am sending herewith my personal note for $5,000.00 with Kendrick Bank stock for like amount attached for your consideration. We would like to have you, in case you can grant us the extension asked in letter regarding our C. D. for $5,000.00 due Dec. 12, 1910, to have you take this note and pass to our credit in place of the C. D. The reason for this is in our statements to the state bank examiner which are published we now have to publish any certificates of deposit to other banks for borrowed money as such, and in a farming community this always causes unfavorable comment and naturally hurts. I feel sure our average daily balance as we have kept it for the past few months will be kept as strong, and we want this extension more to keep our reserve in as good shape as possible. Hoping, if you can carry us for the extension, you will accept this method of loaning us this amount, and again thanking you for your great kindness of the past, I am,

"Yours truly,                    J. W. Bradbury, Prest."

On the 7th the Portland Bank, through its cashier, wrote the Kendrick Bank:

"Answering yours of the 6th instant, we will be pleased to make the extension referred to by you, and will accept the note in lieu of the certificates of deposit."

Certain certificates of stock in the Kendrick Bank were indorsed by Bradbury and another to the Portland Bank as security for the extension. In

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pursuance of this arrangement credit was extended to the Kendrick Bank from time to time in the amount of $5,000, the note of Bradbury in like amount being renewed until December 11, 1911, when, under a like arrangement, the credit to the Kendrick Bank was enlarged to $10,000, Bradbury giving his individual note in like amount to the Portland Bank. At the same time Bradbury indorsed to the Portland Bank an additional 50 shares of stock of the Kendrick Bank as security for the loan or credit. The money in either instance, whether credit was extended the Kendrick Bank by reason of the issuance of its certificate of deposit or by reason of the execution by Bradbury of his note to the Portland Bank, was placed to the account of the Kendrick Bank by the Portland Bank, and was checked against at all times by the Kendrick Bank, and by none other.

Speaking of the enlarged credit, Mr. Newkirk, of the Portland Bank, testifies that they were not loaning any money to Bradbury individually—"absolutely none." At this time Bradbury visited Portland, and the arrangement for the enlargement of the loan was then agreed upon. Newkirk knew nothing of Bradbury's personal responsibility, and cared nothing about it, as he supposed he was dealing with the Kendrick Bank and upon its sole credit and responsibility. He says, "I accepted that note·for the Kendrick State Bank," and, in effect, that the transaction was with Bradbury as president, and for account of the Kendrick State Bank.

Bradbury corroborates Newkirk, and declares that he had no arrangement with the Portland Bank for his individual account. The interest on the note executed in his name was paid by the Kendrick Bank, and the account was carried wholly between the Portland and Kendrick Banks, the money arising from the loan having passed to the credit of the latter bank. The account was checked against and replenished from time to time as the nature of the business between the banks required.

About the 1st of February, 1912, the Kendrick Bank failed, and passed into the hands of the state bank commissioner. Prior to its failure, all the collateral except the bank stock had been returned to the Kendrick Bank, and some time after such failure the bank stock was handed over to Bradbury. The Kendrick Bank was subsequently reorganized, it having secured Bradbury's stock, which was utilized for that purpose. In the course of the negotiations leading up to the reorganization, Bradbury was induced to transfer by check $10,000 from his account then standing to his credit in the Kendrick Bank, which was something above that amount, and at the same time the depositors' committee turned over to Bradbury certain notes, being assets of the bank.

It should be stated that, when credit was negotiated for the Kendrick Bank with the Portland Bank by the use of Bradbury's note, Bradbury passed to his credit in the Kendrick Bank a like amount, charging the Portland Bank with the same amount, which would be the usual and regular method of keeping book account of the transaction. The Portland Bank was not a party to the negotiations of Bradbury with the committee, nor did it have knowledge concerning them.

Bradbury further testifies that he instructed the Portland Bank to, at any time it saw fit, charge the account of the Kendrick Bank· with the note. When the Kendrick Bank failed, there was a balance standing to its credit on account with the Portland Bank of $8,283.09. The Portland· Bank thereupon took credit for this balance, and charged it against the Bradbury note. Now the Kendrick Bank has sued the Portland Bank for this balance as for moneys deposited with it subject to check or draft.

The Portland Bank answers, setting up the facts leading up to and touching the transaction in detail, and alleges as the ultimate fact that the Portland Bank loaned to the Kendrick Bank the sum of $10,000, and as evidence of such loan the latter bank delivered to defendant the note of J. W. Bradbury for the amount; Bradbury being then the president of said bank, and acting for it and in its behalf, as its representative and agent. The Portland Bank also sets up a counterclaim for the difference between the amount sued for and the amount of such note, less $15 paid subsequent to the failure of the Kendrick Bank, being for the sum of $1,701.91, with interest at 6

per cent. per annum from the time such balance was charged against the note by the Portland Bank.

Stapleton & Sleight, of Portland, Or., and C. N. McDonald, of Lewiston, Idaho, for plaintiff.

Dolph, Mallory, Simon & Gearin, of Portland, Or., for defendant.

WOLVERTON, District Judge (after stating the facts as above). It is admitted on the part of plaintiff's counsel that if the loan made by the Portland Bank was to the Kendrick Bank, and not to Bradbury individually, and can be so treated in legal contemplation, then the Portland Bank was legally authorized to charge off the balance standing to the credit of the Kendrick Bank against the Bradbury note, and thus protect itself against loss on account of the failure of the Kendrick Bank to that extent. The vital question depends upon whether, in an action at law, the defendant will be permitted to show that the debt incurred by the execution of the Bradbury note is the debt of the Kendrick Bank, as it was really intended to be by the plain agreement and understanding of the parties.

[1] It is the doctrine in Oregon that, as it relates to simple contracts, the presumption that a contract made in the name of the agent of a known principal is the contract of the agent and not of the principal is a disputable one, and that it may be shown by parole that the principal is bound also, but that in no event may the agent be so discharged. Barbre v. Goodale, 28 Or. 465, 38 Pac. 67, 43 Pac. 378. But it was said in that case:

"This doctrine must be limited to simple contracts, and may not be extended to negotiable instruments and specialties under seal, as they constitute an exception to the rule."

[2] In the present case, however, the defendant, in purpose and effect, is not suing on the note, but to recover on the contract of the parties, of which the note is only an incident. It is a contract of which the principal has received, as it was so intended, the sole and entire benefit. The money obtained through the arrangement went at once to the credit of the Kendrick Bank, and was so held by its correspondent, against which the Kendrick Bank drew checks and drafts as occasion required, and constituted its source of credit with the Portland Bank. Indeed, the contract was entered into by the bank through its recognized officer, and the case does not stand upon the footing of a mere agent contracting in the name of his principal. Individually, Bradbury received not the slightest benefit from the arrangement, and, while he probably would not be allowed to escape being bound by his obligation, yet I am constrained to the view that the bank also, in an action directly between the parties to the contract, cannot escape liability. See Appeal of Third National Bank of Philadelphia et al., 141 Pa. 214, 21 Atl. 598, 12 L. R. A. 223. It would work a glaring injustice here to adopt the opposite view. This is readily apparent from the simple facts of the case.

[3] If it be said that the Kendrick Bank, or its president in its behalf, adopted this method of obtaining credit with the Portland Bank with a view to suppressing a full statement of its liabilities to the bank

commissioner, it may be conclusively answered that the Kendrick Bank will not be permitted to take advantage of its own wrong, and thereby perpetrate an injustice upon the Portland Bank.

[4] Another question presented is whether the president of the bank was authorized to enter into such a contract in behalf of the corporation; but, the bank having received the sole and entire benefit of the transaction, it has ratified the acts of its chief officer, even conceding that he acted beyond the scope of his authority, a question we are not now called upon to determine. Aldrich v. Chemical National Bank, 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611.

In view of these considerations, the defendant is not only entitled to its set-off as claimed, but to recover the balance due from the plaintiff upon the account between the banks.