**Joe GILL, d/b/a Ace Auto Sales, Appellant,**

v.

**UNIVERSAL C. I. T. CREDIT CORPORATION, Appellee.**

No. 6801.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 8, 1955.

Rehearing Denied Oct. 13, 1955.

Sidney Lee, Texarkana, for appellant.

Kennedy & Levee, C. M. Kennedy, Texarkana, B. F. Edwards, Clarksville, for appellee.

FANNING, Justice.

Universal C.I.T. Credit Corporation, an automobile finance company, sued Joe Gill d/b/a Ace Auto Sales, an automobile dealer, alleging breach of a written "Retail Protection Agreement", alleging that under said contract Gill was obligated to purchase from it seven automobiles which it had repossessed from seven defaulting purchasers to whom Gill had sold said automobiles originally and from whom he had taken promissory notes secured by mortgages upon said automobiles, which notes and mortgages had been purchased by the finance company from Gill and duly assigned by Gill to the finance company. The finance company alleged Gill .failed to re-purchase said automobiles as required by the terms of the contract, alleged that although due notice was given Gill of the public sales of said automobiles that he failed to appear at the sales, that the auto-

mobiles were sold for various respective amounts, each less than the indebtedness claimed by the finance company as being due, and the finance company sought recovery from Gill for these claimed deficiencies in the amount of $3,821.43, and in the alternative prayed for judgment in the amount of $5,365. The defendant Gill pleaded among other things that the seven automobiles were sold for cash prices and not on the time credit plan and that the seven notes were usurious, that the finance company demanded more than Gill claimed was due on said automobiles, and that the finance company did not offer to allow him credits against the various claimed indebtednesses against each car for items of insurance premium refunds and for credit reserves. Gill also pleaded that he offered to pay what he contended was then "legally due" on the automobiles at the time they were tendered to him. Gill also pleaded that the "Retail Protection Agreement" was not effective or valid because he had not been accepted as a dealer by the finance company, contending that an oral agreement to that effect was had between him and Teague, agent of the finance company. Gill prayed that plaintiff take nothing and alternatively prayed that the recovery sought by plaintiff should be reduced by the alleged usurious interest and by the insurance premium refunds and credit reserves.

The finance company, after denying generally and specially the allegations of defendant's pleading, pleaded among other things, to the effect that the notes and mortgages in question were not illegal or usurious, were not cash sales, but were sales under the time or credit plan, that Gill never paid anything on said indebtedness, never attended any of the sales of said automobiles, was liable under the "Retail Protection Agreement", that Gill sold the notes and mortgages in question to it for a valuable consideration, and assigned them under a written warranty and that under the terms of said warranty Gill was estopped to contend that the notes and mortgages were illegal or usurious. Trial

was to a jury but at the conclusion of the evidence, plaintiff finance company filed a written motion to the effect that under the undisputed evidence plaintiff was entitled to judgment for $2,806.30. The trial court withdrew the case from the jury and rendered judgment for $2,806.30. (This judgment gave Gill the benefit of the various insurance premium refunds and credit reserves on the automobiles in question but did not give Gill the benefit of the alleged usurious interest.) Joe Gill, d/b/a Ace Auto Sales has appealed.

Appellant's points 1 to 4, inclusive, read as follows:

### "Point 1

"The trial court erred in withdrawing this case from the jury since there was conflicting evidence upon the material issue of whether appellant had offered to pay the sum due on each of the automobiles if appellee would deduct from such sums the illegal and usurious interest and the credit reserves which appellee had added thereon for the insurance premium refunds which appellee had already received or would receive thereafter.

### "Point 2

"The trial court erred in withdrawing this case from the jury since there was conflicting evidence upon the material issue of whether appellee had refused to accept any lesser sum than the full amount of the unpaid balances of the promissory notes, such balance to include the usurious interest and credit reserves, which had been added, and the insurance refunds, which appellee had already received or would receive thereafter.

### "Point 3

"The trial court erred in refusing to reduce the recovery prayed for by the amounts of the illegal and usurious interest which appellee charged the various makers of the notes, by the amounts of the insurance premium refunds

which appellee had received, and by the amounts added to the notes as credit reserves.

## "Point 4

"The trial court erred in withdrawing this case from the jury since there was conflicting evidence upon the material issue of whether the differences between the time and cash selling prices of the automobiles were charged by appellee as interest."

The "Retail Protection Agreement", notes and mortgages in question, and Dealer's assignment instrument, were on forms furnished appellant by appellee, and the notes and mortgages were filled out by appellant in accordance with appellee's rate charts furnished by appellee and appellee would not have purchased such notes unless they were filled out on appellee's forms in accordance with appellee's instructions.

The Wade contract (which is similar in form to the other contracts involved here) recites that the sum of $285 was paid in cash or trade-in (in this case it was a trade-in) leaving a time balance of $820.50, payable in 15 successive monthly installments of $54.70. There is also this statement shown in the contract (which was duly signed by Wade and accepted by Gill), to-wit: "Customer, having been quoted a time price and a lesser cash price, has elected to buy the car for the time price, which is the sum of the amounts shown above as 'Payable in cash or trade-in before delivery' and 'time balance'." The other contracts also contain this same provision and on their face show that the purchasers purchased said automobiles on the "time price" rather than the cash price. With respect to the Wade transaction appellant in his brief argues and states as follows:

"The procedure adopted was that appellant added all appellee's charges, in accordance with appellee's instructions, to what appellant wanted for each of his automobiles. Thus, for the automobile sold to Wade, appellant got a cash price of $850. This was the basic figure as far as appellant was concerned.

Everything else was determined by appellee and was done according to appellee's instructions. Now Wade traded another used automobile to appellant for an agreed price of $285, which was credited on the $850 cash price of the automobile he, Wade, was buying. This left the sum of $565 for appellee to finance. To this was added a $93 insurance premium, and this resulted in a total of $658, this being the amount appellee was out of pocket on this deal. Appellee then added to $658 a credit reserve for appellant of $35.62 and its own interest charge of $126.88, and the total was $820.50. The latter sum of $820.50 was the face amount of the note which Wade signed and which he was to pay in 15 monthly installments of $54.70 each."

On Oct. 15, 1952, appellant Gill entered into a written "Retail Protection Agreement" with appellee finance company, the material portions reading as follows:

"1. You propose to buy from us, on the basis stated in this agreement, paper acceptable to you covering new and used cars; * * *.

"2. We will purchase from you each repossessed or recovered car *tendered at our place of business within 90 days after maturity of the earliest instalment still unpaid. The purchase price payable on demand shall be the unpaid balance due on the car, limited as stated in paragraph 3.*"

(Paragraph 3 is not applicable as there were no converted or confiscated cars involved and no damages resulting from collision necessitating repossession of the motor vehicle in question)

"4. * * *. Three times in each twelve-month period, if we are not then indebted to you, you will pay us our accumulated reserves in excess of 3% of the then aggregate unpaid balances on paper purchased from us. If you stop buying our paper, you may hold and apply all reserves until liqui-

dation of all paper purchased from us is completed."

(Paragraph 5 is not applicable as there were no prepayments by the makers of the time price sales paper) ·

(Paragraph 6 is not applicable)

"7. * * * If we àre in default to you under this or any other agreement or obligation at the time of any repossession, cars may be tendered by registered mail notice sent to the last address shown by your records, instead of as provided in paragraphs 2 and 3 above; if we are not then doing business as a going concern, tender of repossessed cars is waived. In case we fail to purchase repossessed cars we will be responsible for any deficiency incurred by you in the resale of such repossessed cars at public or private sale held with or without notice, at which you may purchase.

"8. * * * *No waiver or change of any part of this agreement shall be binding on you unless evidenced by writing signed by one of your officers.*

"9. *The purchase of paper by you from us shall constitute acceptance by you of this agreement,* which shall cover all such purchases. This agreement shall inure to and bind our respective successors and assigns and any present and future company affiliated with you which may transact business hereunder." (Emphasis ours)

Appellant Gill sold appellee finance company the notes and mortgages on automobiles he had sold to purchasers Wade, Burris, Caldwell, Hughes, Adams, McRae and Mothershead, with appellee paying the cash sums of $565, $475, $875, $950, $900, $700, and $900 respectively for said notes to appellant. Appellee also paid an insurance company premiums for insurance policies on each of these automobiles in the various amounts as shown by the record. Said notes and mortgages were duly assigned by written assignment to appellee finance company by appellant Gill, which assignment also contained certain warranties. We quote from said written assignment and warranty as follows:

### "Dealer's Assignment

"We hereby sell and assign the contract on the reverse side and all interest in the car, and our rights under any guaranty, to Universal C.I.T. Credit Corporation (Universal C.I.T.), *without recourse* as to Customer's obligation of payment, except as may be otherwise provided in any underlying agreement, with full power to Universal C.I.T. in its or our name to take all such legal or other proceedings as we might take, save for this assignment. *We warrant that: the contract is genuine and that we hereby convey good title thereto; all statements of facts therein are true; the cash payment and any trade-in were received; we have clear title to the car, free of all liens and encumbrances, except for this contract; the time price, at which Customer has elected to buy, does not exceed the cash price by a sum equivalent to more than 10 per cent per annum computed on the latter; Customer is not a minor and has capacity to contract; Certificate of Title showing lien or encumbrance in favor of Universal C.I.T. has been or will be forthwith applied for if required by law.* We waive all demands and notice of default and consent that without notice to us Universal C.I.T. may extend time to or compound or release, by operation of law or otherwise, any rights against Customer or any other obligor. If we execute any guaranty, the words 'without recourse as to Customer's obligation of payment' are deemed deleated. We have no knowledge of any facts which may impair the validity or value of said contract." (Emphasis ours)

Appellant, taking the position that the sales in question were made on cash prices rather than on "time sales prices", makes various tabulations in his brief with respect to the Wade note and the other notes in question, which according to his contentions

(based on his assumption that the sales were made on cash prices) would show usurious interest was provided in each of said notes, taking into account the "cash prices" of the automobiles in question, the insurance premiums paid, the "reserve credits", and the "service charges" in the various transactions. Appellant further contends that there was a fact issue as to whether each of the seven contracts was usurious, citing in support thereof among other cases, the cases of Associates Inv. Co. v. Thomas, Tex.Civ.App., 210 S.W.2d 413, no writ history; National Bond & Inv. Co. v. Atkinson, Tex.Civ.App., 254 S.W.2d 885, wr. dis., and Associates Inv. Co. v. Sosa, Tex.Civ.App., 241 S.W.2d 703, wr. dis.

Appellant contends that he offered to pay appellee the amount legally due, that appellee was not entitled to usurious interest, insurance premium refunds and credit reserves, and that appellee demanded more of appellant than was legally due, that this was a breach of the contract between the parties and would excuse performance by appellant, and cites various authorities with respect to this matter in his brief.

Appellee contends that this suit was predicated upon the breach of the written "Retail Protection Agreement" sued upon involving "time sale price" paper purchased by appellee from appellant; that plaintiff's suit was not upon the various sales contracts but was for breach of the "Retail Protection Agreement"; that the various sales contracts were under the undisputed evidence on "time sales prices", were not on "cash sales prices", were not usurious, but were perfectly legal "time sales price" contracts under Article 5074a, Vernon's Ann.Civ.St., and under the case of Rattan v. Commercial Credit Corporation, Tex.Civ. App., 131 S.W.2d 399, writ refused.

Article 5074a, Vernon's Ann.Civ.St., reads in part as follows:

"*Art. 5074a. Cash and time prices in sales of motor vehicles*

"Section 1. Whereas, It has heretofore been recognized by the courts of this State that a seller may have a cash price for his commodities and may have also a different and higher time credit price for the same commodity, and that such difference in said prices do not constitute interest for the forbearance, use or detention of money or credit; and

"Whereas, the Federal Trade Commission has prescribed rules and regulations requiring that the items of cost taken into consideration by the seller of motor vehicles in arriving at the time credit price thereof be disclosed to the purchaser. It is the intention of this Act to preserve to the seller his legal right to sell motor vehicles on a time credit price and at the same time permit him to make disclosure to the purchaser of the motor vehicle, the items of cost the seller has taken into consideration in arriving at the time credit price for which the motor vehicle is sold.

"Sec. 2. If after the effective date of this Act any seller of motor vehicles shall furnish or be required to furnish to the purchaser, a disclosure of the items of cost which the seller has taken into consideration in arriving at the time credit price for which the said motor vehicle has been sold, the furnishing of this information in writing by the seller to the purchaser and the quotation of the cash price shall not in any manner affect the validity of the whole or any part of the time credit price, nor in any manner change the legal nature of the time credit contract.

"Sec. 3. In furnishing this information the seller shall have the right to ascertain the exact information concerning each of the said cost items from third persons without in any manner affecting or changing the legal nature of the time sales contract or time credit price to which the purchaser has agreed in writing.

"Sec. 4. If the seller shall have furnished the purchaser an itemization in writing of such cost items as the seller

has taken into consideration in arriving at the time credit price, and the purchaser has signed a written contract evidencing the agreement that the motor vehicle has been purchased under a time credit price, *said written contract shall constitute prima facie evidence of the fact that said motor vehicle was sold for a time credit price.*" (Emphasis added.)

In Rattan v. Commercial Credit Company, supra, it was held that an automobile dealer might have a cash price and a different credit price for the sale of an automobile, and that the method of computing the deferred credit price was immaterial as long as the purchaser knew there was a difference between the cash price and deferred credit price and elected to buy on such deferred credit price. The Supreme Court of Texas refused outright a writ of error in this case. In 31 Texas Law Review, page 55, there is a detailed discussion of the type of credit or "time sales" prices approved in the Rattan case.

The Wade and other automobile sales contracts on their face and by their plain and unambiguous terms purport to be on the credit or "time salees" contract prices, which contracts were duly signed by each of the purchasers of said automobiles with the provision in said contracts that they had "been quoted a time price and a lesser cash price" and had elected to buy the car for the time price, which contracts were filled out by appellant Gill and accepted by him.

█ The sales contracts evidencing on their faces that the automobiles in question were purchased under time credit prices, under Art. 5074a, supra, constitute prima facie evidence of the fact that said motor vehicles were sold for time credit prices. None of the various automobile purchasers were produced as witnesses to deny any of the facts recited in the purchase contracts which they signed. Also appellant Gill specifically admitted on cross-examination that the various purchasers had signed the various sales contracts and that they knew that the "time price" was considerably higher than the "cash price" and knew that

by buying on "time" they were paying higher prices than by paying cash.

█ It is our best judgment that under the material undisputed evidence in this case that the automobile sales contracts in question were made on credit or "time sales" prices, were not made on "cash sales" prices, and therefore such contracts were not usurious or illegal under the provisions of Article 5074a, Vernon's Ann.Civ.St., and under the holding of the Rattan case, supra.

Appellee further contends that if the said "time price" sales contracts were in fact usurious, then that appellant would be estopped to plead usury or any invalidity of said sales contracts because by the terms of the written warranty given by appellant in the assignment of the several "time price" sales contracts the appellant warranted to appellee that each "time price" sales contract was genuine and that good title was conveyed by the assignment, that all statements and facts therein were true, etc., that the time price at which the customer had elected to buy did not exceed the cash price by a sum equal to more than ten per cent per annum computed on the latter, etc.

The "Retail Protection Agreement" sued on by plaintiff-appellee was a separate and distinct contract from the time price conditional sales contracts taken by appellant and, assigned to appellee. Mahaney v. Lee, Tex.Civ.App., 171 S.W. 1093.

In Slaton State Bank v. Amarillo National Bank, Tex.Civ.App., 288 S.W. 639, 642, which was a suit on a re-purchase agreement executed by the Slaton Bank to the Amarillo Bank as collateral to the sale and transfer of certain notes to the Amarillo Bank, which were later urged to be forgeries, the court stated:

"Under these facts we hold that the Slaton State Bank accepted and disposed of the proceeds of the repurchase agreement, and is estopped to deny liability thereon. First Guaranty State Bank v. Liberty State Bank (Tex.Civ. App.) 260 S.W. 660; Farmers' State Bank v. First State Bank (Tex.Civ.

App.) 260 S.W. 664; Goldstein v. Union National Bank, 109 Tex. 555, 213 S.W. 584; Kendrick State Bank v. First National Bank (D.C.) 206 F. 940."

■ If we be mistaken in our holding that the sales contracts in question were not usurious because they were valid "time price" sales contracts under Art. 5074a,. and the Rattan case, then it is our further opinion that under the facts of this case and under the written warranty given by appellant to appellee above quoted and referred to, that appellant is estopped to contend that the sales purchase contracts in question were usurious or invalid.

It is true that there were conflicts in the testimony of appellant Gill and Mr. Hodde, agent of appellee, with respect to the amounts ·demanded by appellee and the amounts appellant offered to pay on the tender of the cars in question but we do not deem·these conflicts material in the disposition of this case in view of other undisputed facts in the case. Mr. Gill testified that when the cars were tendered he offered to pay the balances of the notes if appellee would give him credit for the "alleged usurious interest", the insurance·premium refunds and the cash reserves, and he further testified 'that appellee refused: to give him these credits. Mr. Hodde testified that he·offered to make a reduction·on a contract for insurance premium refunds and certain other charges, that Gill told him he would get him a check, but "I never saw the check". The undisputed evidence shows that the automobiles in question were tendered to Gill in the manner provided in the "Retail Protection Agreement"; ·that Gill, although he made various contentions about the amounts due, and offered to pay a *lesser* amount than that which was legally due· at that ·time, actually never did tender in cash any amount for said cars, did not attend any of the sales in question to bid on the automobiles in order to protect himself in the matter, and did not pay anything to appellee on his obligations to appellee.

Under the· specific terms of the "Retail Protection Agreement" the credit reserves were not refundable until *all* of the "time-price" sales contracts purchased by appellee from appellant *had been paid in full.*. Also there was testimony to the effect that the unearned insurance premiums were not refundable until the balances on the time paper were paid.

■ Admittedly Gill sold the automobile sales contracts in question to appellee for the various sums of cash as shown by the record, and appellee paid the insurance premiums on each contract, but appellant Gill takes the position that because appellee demanded the balances due on said notes (without giving appellant credit for (1) insurance premium refunds, (2) credit reserves and (3) alleged usurious interest), that the contract was breached by appellee and that appellant therefore should escape from all liability, 'or in the alternative should escape liability from the alleged usurious interest, since the trial court in its judgment gave appellant the benefit of the credit reserves and unearned insurance premiums. While it is· true that appellee demanded and· sued for more than. it recovered, it is also true that the defendant Gill never did at any time offer to pay (or tender) to appellee as much as ·the amount which the trial court correctly rendered judgment for .appellee. Gill offered to ·pay a *lesser* amount (when the ,automobiles in question were tendered to· him) than that which was *then* unquestionably due. (Also ·under the "Retail Protection Agreement" unquestionably the .credit reserves were not refundable until Gill had paid *all* amounts ·due· by him to appellee—however·the trial court ·in his judgment gave Gill as offsets the benefit of these credit reserves and insurance premium refunds which had been paid to appellee.) Not having offered to pay as much as the correct amount due, nor having tendered the correct amount or any amount, and not having actually paid anything to appellee on his obligations to it, Gill, under the facts in this case, in our opinion, can not justly escape liability in this case either in law or in equity.

·We have carefully considered the entire record, the various contentions and counter-

contentions of the parties, and have reached the conclusion that there were no material issues of fact in this case for the jury and that the trial court did not err in withdrawing the case from the jury and rendering judgment in favor of appellee-plaintiff. Appellant's points 1 to 4 inclusive are respectfully overruled.

Appellant's Point 5 reads as follows:

"Point 5

"The trial court erred in exluding, Jack Teague's and appellant's testimony that the so-called "Retail Protection Agreement" of October 15, 1952, was not to be effective unless and until appellee accepted appellant as a dealer, which appellee never did, and in not submitting an appropriate issue to the jury inquiring whether such testimony was true."

The last sentence of Paragraph 8 of the Retail Protection Agreement provided: "No waiver or change of any part of this agreement shall be binding on you unless evidenced by writing signed by one of your officers". The first sentence of Paragraph 9 of said agreement provides: "The purchase of paper by you from us shall constitute acceptance by you of this agreement, which shall cover all purchases". By the terms of such Retail Protection Agreement when appellee purchased the first time price sales contract and each subsequent contract, the agreement became effective immediately and covered all the paper sold and assigned by appellant to appellee. Also under this record there was no written authority shown in Teague (former agent of appellee) as an officer of appellee to vary or change the terms of the Retail Protection Agreement in any manner and certainly none to the effect that the written "Retail Protection Agreement" would not be binding until Gill had been accepted as a dealer by appellee. We think the trial court (pursuant to pertinent objections made by appellee's counsel) correctly excluded the proffered parol testimony in question of Teague and appellant because such proffered testimony was clearly inconsistent with and in conflict with the written "Retail Protection Agreement" and for the further reason that there was no written authority shown in Teague (the former agent) to change, vary or nullify the written "Retail Protection Agreement". See the following authorities: 17 Tex.Jur., Sec. 352, Evidence—Civil Cases, pp. 791, 792; 2 Tex.Jur., Sec. 45, Agency, Stipulation Limiting Authority, pp. 433, 434. Appellant's 5th point is overruled.

We further hold that the various makers of the automobile time sales price contracts in question were not necessary parties to this suit. We think appellee-plaintiff's cause of action against appellant-defendant was one for damages arising directly from the breach by appellant of the Retail Protection Agreement, and was not a suit on the various time sales price contracts in question. Also the respective time price sales contracts in question show that each and all of the purchasers were residents of the State of Arkansas or Louisiana. Even if appellant was a guarantor or surety upon the several time price sales contracts sold and assigned by him to appellee, which we think he was not under this record and under the contract in question, the makers of such time price sales contracts, residents of Louisiana and Arkansas, and non-residents of the State of Texas, would not be necessary parties to a suit on such time sales price contracts against appellant-defendant, if such a suit had been brought. See Art. 1987, Vernon's Ann.Civ.St. Appellant's 6th point is respectfully overruled.

After carefully considering all of appellant's points and contentions it is our opinion that the trial court correctly rendered judgment for appellee in this case.

The judgment of the trial court is affirmed.