**Walter W. RAMEY et ux., Appellants,**

v.

**AMARILLO INVESTMENT COMPANY et al., Appellees.**

No. 5530.

Court of Civil Appeals of Texas.

El Paso.

May 2, 1962.

Rehearing Denied May 16, 1962.

Edwards, Belk, Hunter & Kerr, Berry H. Edwards, El Paso, for appellants.

Scott, Hulse, Marshall & Feuille, Orda Lee Malone, El Paso, for appellees.

LANGDON, Chief Justice.

Appellants Walter W. Ramey and wife, Ruth Ramey, brought suit against appellees, Amarillo Investment Company and Joe E. Taylor, for the alleged conversion of a house-trailer, household furnishings kept therein, and for the loss of certain personal possessions. Appellants also alleged that Amarillo Investment Company had collected payments under a usurious conditional sales contract. Suit was for damages for the alleged conversion, cancellation of the contract, and damages for the loss of certain possessions. Trial was to a jury.

At the conclusion of appellants' evidence appellees moved for a directed verdict. The motion was granted and the trial court instructed a verdict in favor of appellees. Based on the jury verdict returned in accordance with the court's instruction, a "take nothing" judgment was rendered against appellants. From such judgment appellants have perfected this appeal.

In our opinion the material and controlling facts of this case are not in dispute. No jury issue was raised by appellants' evidence. The only questions presented were questions of law for the court to decide, and these questions were quite properly decided by the trial court in favor of appellees.

The record reflects that on or about December 16, 1957, in Albuquerque, New Mexico, Jack and Anita Triden entered into a contract with Western Trailer Sales for the purchase of the house-trailer involved in this controversy. The Tridens executed a conditional sales contract to Western Trailer Sales calling for total time payments in the sum of $6,856.25 payable over a period of 60 months in installments. The first installment was to become due January 5, 1958, in the sum of $144.55, subsequent payments in the amount of $111.86 becoming due on the 5th day of each succeeding month thereafter. All of the information recited above, showing the total amount of the time payments, and the amount of the monthly installments, due dates and the description of the property subject to the conditional sale, was filled in at the time the contract was executed by the parties. Other blanks showing the calculations by which the total time payment was figured were inserted in the conditional sales contract after it had been signed by the Tridens. Among other things the contract provided that the purchaser would keep the trailer free of all taxes, liens and encumbrances; that purchaser would not remove same from the State without first giving notice to seller and obtaining the written consent of seller; and that the purchaser would not assign or transfer any interest in the trailer or in the contract. The contract

also provided for repossession of the trailer, the sale thereof, and acceleration of maturity of the installment payments in the event of any default on the part of the purchaser with respect to any of the terms or conditions of the contract.

The conditional sales contract was sold and assigned by Western Trailer Sales to the appellee, Amarillo Investment Company. Thereafter, on or about January 26, 1959, the Tridens (purchasers under the conditional sales contract), without notice to or the consent of Amarillo Investment Company, attempted to convey their equity in the house-trailer to appellants for the sum of $1,293.02. The Tridens and appellants entered into an agreement under which appellants took possession of the house-trailer and agreed, among other things, that they would not remove the house-trailer from the city limits of Albuquerque, New Mexico without the written consent of the Tridens. It was also stipulated in the agreement that in the event Amarillo Investment Company should refuse to permit appellants to take over the payments due under the conditional sales contract, the Tridens would refund to appellants the sum of $250.00 provided appellants, at such time, had paid the Tridens the full sum of $1,293.02 for their equity.

On May 28, 1959, after obtaining possession of the house-trailer from the Tridens, appellants—without notice to or the consent of Amarillo Investment Company—moved it to El Paso, Texas to the Rancho Grande Trailer Park. Appellants failed, for a period of three months, to pay rent on the space occupied by the trailer in the Rancho Grande Trailer Park. Appellants left the trailer in El Paso to take temporary employment in Pecos, Texas. During their absence the trailer park changed hands; the new owner did not know the appellants or their whereabouts and concluded that the trailer had been abandoned. Three months' rent became due on the space occupied by the trailer, and the owner of the park chained the trailer down with a log chain and asserted a possessory landlord's lien against the trailer for the unpaid rent. Having discovered that the trailer was registered in the name of the Tridens and that Amarillo Investment Company held a lien thereon, the park owner notified both that the trailer was abandoned and that three months' rent ($90.00) was then due, and demanded payment.

The Tridens, after having been advised that appellants owed rent on the trailer space, tried unsuccessfully to locate appellants by long-distance telephone, both in El Paso and in Pecos. Being unable to locate them, they advised the Amarillo Investment Company of the arrangement they had with appellants; told them that they would make no further installment payments thereon; and then expressly authorized Mr. Tony Gilson of the company to repossess the house-trailer. This Amarillo Investment Company did and, in the capacity of mortgagee, sold the trailer to Earl J. and Helen Taylor, parents of the appellee Joe Taylor.

At the time of the repossession, the terms of the conditional sales agreement (under which the Triden's rights to the trailer depended and, consequently, the rights of appellants) had been breached in the number of respects. Default had been made in the payment of monthly installments due thereon; the landlord's lien had been permitted to attach; an attempted assignment or transfer of the purchasers' (Tridens') interest in the trailer had been made; and the trailer had been moved from the State of New Mexico without the consent of Amarillo Investment Company.

Appellants knew, when they contracted with the Tridens for the purchase of their equity, that Amarillo Investment Company had a claim on the trailer and that any valid assignment of the Triden interest or equity depended upon the consent and approval of Amarillo Investment Company. Appellants' written agreement with the Tridens establishes this fact. The Tridens consented to and authorized the repossession; when their title or interest in the trailer was ex-

tinguished, the rights of appellants therein, if any, also failed.

We believe, therefore, that appellants failed, as a matter of law, to establish that they were "the rightful possessors and owners" of the trailer in question, as plead by them, and that in the absence of such proof appellants' cause of action against both appellees for an alleged conversion of the house-trailer failed as a matter of law.

■ Appellants make no point on appeal concerning the loss of certain personal possessions alleged to have been left in the house-trailer. They do, however, complain that there was sufficient evidence upon which a jury could have found that each item of the furniture in question was converted by Amarillo Investment Company, and also that there was sufficient evidence upon which a jury could have found that appellee Joe E. Taylor was a party to the conversion of appellants' furniture.

Appellants alleged that they were the owners of certain furniture worth $150.00 which was stored in the house-trailer and which they contend was wrongfully appropriated by appellees. Having carefully examined the entire record, we have concluded that there is no evidence to support appellants' contention that either Amarillo Investment Company or Joe E. Taylor wrongfully appropriated or otherwise converted such furniture. Amarillo Investment Company sold the house-trailer to Earl J. and Helen Taylor, parents of appellee Joe E. Taylor. The company did not purport to sell the furniture to the Taylors, and we can find no evidence that such company exercised or attempted to exercise any control or dominion over the furniture other than to repossess the house-trailer in which it was stored; and this, we believe, they had a right to do. When Earl J. and Helen Taylor (not parties to this suit) moved into the trailer after purchasing it from Amarillo Investment Company, they removed the furniture from the trailer, piece by piece. At time of trial they were

still in possession of such furniture and it was available to appellants through them. However, as stated, Earl J. and Helen Taylor were not made parties to the suit. Appellants sued their son, Joe E. Taylor, whose only connection with either the trailer or the furniture was by way of assisting his parents in making the purchase from Amarillo Investment Company.

We hold that the trial court correctly directed a verdict in favor of appellees. In making this determination we have examined the entire record, including all the testimony relevant to the issues here involved; and, viewing the evidence in the light most favorable to appellants, disregarding all conflicts and indulging every intendment reasonably deducible from the evidence in favor of such appellants, we are of the opinion there is no evidence tending to sustain appellants' case. Baumgarten v. Frost, 143 Tex. 533, 186 S.W.2d 982, 159 A.L.R. 428; White v. White, 141 Tex. 328, 172 S.W.2d 295; King v. King, 150 Tex. 662, 244 S.W.2d 660.

We reject appellants' contention that the conditional sales contract under which the Tridens purchased the trailer was usurious. The contract itself clearly reflects that the house-trailer was purchased under a time-credit-price plan. It is well settled that a seller may have a cash price for his commodity and a different and higher time credit price for the same commodity, and such difference in price does not constitute interest for the forbearance, use or detention of money or credit. National Bond & Investment Co. v. Atkinson, 254 S.W.2d 885 (Civ.App., error dis'm.); Gill v. Universal C.I.T. Credit Corporation, 282 S.W.2d 401 (Civ.App., ref. n. r. e.).

In addition, it is a general rule that the defense of usury is personal to the borrower, and may be urged only by him or persons in privity with him; that is, a person who is not a party to a loan contract and who has not acquired rights based thereon may not urge that it is usurious. While this rule is subject to some exceptions, we do not be-

lieve the exceptions to the rule are applicable to the facts of this case.

Appellants have raised a number of other points, all of which, after careful consideration, we have concluded have no application to the merits of this appeal and should therefore be overruled, and it is so ordered.

Finding no error, the judgment of the trial court is affirmed.